[McCaw v. Barker, *et al.*; Pegram, Trustee v. Barker, *et al.*]

# McCaw *v.* Barker, *et al.*

## and

# Pegram, Trustee *v.* Barker, *et al.*

*Bill in Equity by Tenant in Common against Co-Tenant for Accounting.*

1. *Bill for an accounting; waiver of answer under oath; amendment.* A bill filed simply for an accounting, which contains no interrogatories and waives an answer under oath, can not, after answer, be amended as matter of right under section 3449 of the Code of 1886, so as to propound interrogatories, and require defendant's answer to be under oath.

2. *Same; harmless error.*—Where such bill is amended by adding the interrogatories but waiving oath, the complainants can not complain since they could have obtained answers to the interrogatories by propounding them on the examination of the defendant as a witness.

3. *Liability of one tenant in common to account to the other for rents and profits.*—The occupancy of a common estate by one tenant in common with the consent or forbearance of the other, does not render him liable for rents; but where such tenant actually receives rent from a third party for the use of the property, he may be compelled to account to his co-tenant for the same.

4. *Same; accounting by bill in equity.*—Where the amount of rents received by one co-tenant for the use of the common property is fixed and certain, and there is no confusion or complication of the accounts between the tenants in common, the one who has not received his share has a plain and adequate remedy for its recovery at law, and can not maintain a bill in equity for such purpose.

APPEALS from the Chancery Court of Mobile.

Heard before the Hon. WILLIAM H. TAYLOE.

The original bill in this case was filed by Ann E. McCaw on June 20, 1891, against R. G. Pegram, as trustee of the devisees under the will of John D. Ragland, deceased, Prelate D. Barker, and James W. Lapsley, Osborne H. Parker, Oscar E. Smith and William Stringfellow, as executors of the will of Duncan T. Parker, deceased. The bill was subsequently amended,

and as amended, alleged in substance the following facts :
Ann E. McCaw, as surviving trustee under the will of
Hugh McCaw, deceased, owned an undivided one-third
interest in the property in the city of Mobile, known as
Planters' Press and Warehouse ; that R. G. Pegram, as
trustee for the devisees under the will of John D. Rag-
land, deceased, owned an undivided one-half interest in
said property, and that Prelate D. Barker owned an un-
divided one-sixth interest in said property, and all were
tenants in common.   On April 13th, 1885, Duncan T.
Parker purchased the remaining one-sixth interest from
Mrs. Mary L. McCaw, the former owner, and which in-
terest he, the said Parker, conveyed to the said Barker,
and the said Barker held the same by an unrecorded
deed from Parker.   The deed from said Mary L. McCaw
to said Duncan T. Parker was recorded on the 26th day
of September, 1886.   After said purchase Parker &
Barker, a firm composed of said D. T. Parker and P. D.
Barker, held themselves out as the tenants in common
with the owners as aforesaid of said property and dealt
with it as such part owners.   The firm of Parker &
Barker combined together secretly and clandestinely to
use the said one-sixth interest for their joint interest
and advantage and in fraud of the other co-tenants, and
on the 21st day of October, 1886, made a written con-
tract with the Cotton Press Association as follows :
"This Association agrees to pay  *   *   *  Parker &
Barker $1,200 per annum to prevent Planters' Press and
Warehouse from being used in any way for the cotton
press or storage business, which they herein guarantee
to do.  *   *   ." This contract was for four years from
and after the 1st day of September, 1886.   The bill
further alleged that Parker & Barker jointly received
the money agreed to be paid them in said contract with-
out notice to complainant, to-wit, $1,200 on March 16,
1887, $1,200 on the 8th of January, 1888, $1,200 on the
8th of January, 1889, and $1,200 on the 8th of January,
1890.   Prior to the time of the purchase of said one-
sixth interest in said property by Parker, and during
the year 1885 and previous thereto, the Cotton Press
Association of Mobile had been paying the owners of
said property, viz., Ann E. McCaw, as trustee, and said
Pegram, as trustee, and said Mary L. McCaw the sum
of $1,500 per annum rent for said property.   During

the existence of said contract between said Parker & Barker and the Cotton Press Association, viz., for four years from September 1st, 1886, said property remained practically vacant, being used only to a limited extent; said Association refusing to rent the same as it had been doing. No part of the $1,200 per annum, or $4,800 received by Parker & Barker from the Cotton Press Association, has been paid to said Ann E. McCaw as surviving trustee, or to said Pegram as trustee. Said contract was studiously kept secret by Parker & Barker from the other co-tenants and they did not know, and they had no means of knowing of its existence, until about August 12, 1890, when said Cotton Press Association commenced a suit in said chancery court and made said contract an exhibit to its bill. Complainants, after learning of the existence of said contract, assented to the same and made demand on P. D. Darker, and also upon the executors of said Duncan T. Parker, said Parker having died in April, 1890, for their proportion of said $4,800 rent.

The prayer of the bill was that the said Pegram as said trustee, P. D. Barker and the executors of said Duncan T. Parker should be made parties, and that the said Barker and the executors of said Parker should pay to complainants their proportion of the money received by the said Parker & Barker from the Cotton Press Association by virtue of said contract, and further, that the court should render a decree "compelling the said P. D. Barker and the executors of D. T. Parker, deceased, to account with them in this court for their share of the rents, profits and proceeds of said property."

Said R. G. Pegram, as trustee, under the will of John D. Ragland, deceased, filed an answer, admitting the allegations of said bill, and prayed that his answer might be taken as a cross-bill, and that the said Barker and the executors of said Parker should account to him in said court for his share of said money paid by said Cotton Press Association to said Parker and Barker, less proper credits, if any, to which the said Parker & Barker should be entitled.

The foot notes to the original bill and to the cross-bill waived answers under oath. On March 17th, 1892, the complainant in the original bill and the complainant in

35

the cross-bill filed separate motions, each praying to be allowed to amend said bill and cross-bill, respectively, by propounding certain interrogatories to the said Prelate D. Barker, which amendment the chancellor, on May 3d, 1892, upon appeal from the rulings of the register by the said Barker and the executors of said Parker, refused and disallowed.

On the final submission of the cause, the chancellor decreed that neither the complainants in the original bill, nor the complainant in the cross-bill were entitled to relief, and ordered that each of said bills be dismissed. From this decree the complainant in the original bill and the complainant in the cross-bill appeal, and assign as error the disallowing by the court of the amendment to the original and cross-bill, which was proposed, and the final decree dismissing the original bill and the cross-bill.

BESTOR & GRAY and SHELTON SIMS, for appellant. 1. The answer under oath of the defendant may be waived, and if waived in the original bill may be required to an amended bill.—3 Brick. Dig., 390, § 386, *et seq.; Taunton v. McInnish,* 46 Ala. 619; *Wilkinson v. Bradley,* 54 Ala. 677; *County of Dallas v. Timberlake,* 54 Ala. 403. It is not matter of objection that answer on oath of one defendant is waived and a verified answer required of others.—*Dallas County v. Timberlake,* 54 Ala. 403.

2. A tenant in common, who uses the joint property and makes a profit out of it must account to his cotenants for his share of the net profits.—*Pope v. Harkins,* 16 Ala. 321; *Sanders v. Robertson,* 57 Ala. 470; *Gayle v. Johnston,* 80 Ala. 395; *Edsall v. Merrill,* 37 N. J. Eq. 114; *Hannah v. Osborne,* 4 Paige Ch. 336; 11 Amer. & Eng. Encyc. of Law, 1103; *Turner v. Sawyer,* 150 U. S. 586; *Rothwell v. Dewess,* 2 Black (U. S.) 613; *Van Horne v. Fonda,* 5 John. Ch. 407; Freeman on Co-tenancy, § 151; *Gilchrist v. Beswick,* 10 S. E. Rep. 371.

3. The jurisdiction of a court of equity, as between tenants in common, is not based on the question of complicated accounts. Whenever there is a complicated account, another element of equity jurisdiction is created. The jurisdiction exists by virtue of the relation of co-tenant and partnership; such relation being one of

trust and confidence. Courts of chancery have jurisdiction to settle a trust or call a trustee to account; such being the case, then it has jurisdiction in this case, for in *Sanders v. Robertson*, 57 Ala. 470, cases of account between tenants in common, between partners and the like are held to be cases of peculiar agencies, requiring the interposition of a court of equity.—*Leach v. Beatties*, 33 Vt. 195; *Wright v. Wright*, 59 How. Pr. 176; 1 Story Eq. Jur., § 466; *Waldron v. Simmons*, 28 Ala. 629; *Nelms v. McGraw*, 93 Ala. 245.

No counsel marked as appearing for appellee.

HARALSON, J.—The original bill was filed June 20, 1891. The answer and cross-bill of R. G. Pegram, trustee, was filed July 31, 1891. The original and cross-bill, each, waived the oath of the defendants thereto, and neither contained interrogatories to any of the defendants, under rule 13, Chancery Practice. The answers and demurrers of the other defendants to the bill were filed in the month of August, 1891. On the 17th March, 1892, the complainants in the original and cross-bills, filed separate motions, to allow them to amend their bills, respectively, by adding thereto certain interrogatories to P. D. Barker, a defendant to each of said bills, and requiring his answer thereto under oath. This amendment was allowed at rules by the register, from which order the defendants, Barker, and the executors of Duncan T. Parker appealed, and on May 3d, 1892, the chancellor rendered a decision reversing and annulling the order of the register, and ordering that the said amendments to the original and cross-bills be disallowed; but, by leave of the court, said bills were each amended by adding to them, the same interrogatories to said P. D. Barker, but waiving the oath of said Barker thereto.

1. The proposed amendments came under section 3449 of the Code of 1886, and were not allowable as a matter of right. They had no reference to "striking out or adding new parties, or to meet any state of the evidence which will [would] authorize relief."—*Ex parte Ashurst*, 100 Ala. 573. No harm was done the complainants, since they might have availed themselves of the answers to the questions desired, and obtained the same infor-

mation by propounding the same questions to the defendant, Barker, on his examination as a witness. Neither the bill nor cross-bill was filed for a discovery, and contains none of the elements of such a bill, either under the statute, (Code of 1886, §§ 3541, 3545), or under the general jurisdiction of equity in such cases, and neither contains any of the necessary allegations for the maintenance of such a bill, nor did the proposed amendments, if that fact were of any consequence, contain any such averment.—*Guice v. Parker*, 46 Ala. 616; Story Eq. Pl., §§ 317-321.

2. The rule is well settled, that the friendly occupancy of the common estate by one tenant, does not render him liable to account for rents and profits.— *Newbold v. Smart*, 67 Ala. 326; *Wilkinson v. Stewart*, 74 Ala. 204; *Ferris v. Montgomery Land & Improvement Co.*, 94 Ala. 563. But, where one tenant in common actually receives rents for the common property from those to whom he rents it, he may be compelled to account for such profits actually received.—Freeman on Cotenancy & Partition, § 273; *Gayle v. Johnston*, 80 Ala. 396; *Sanders v. Robertson*, 57 Ala. 470; *Pope v. Harkins*, 16 Ala. 321.

The question is here presented, whether one tenant in common, liable to his co-tenants for rent, has the right to maintain a bill in equity to recover such rents, when the amount received by him is fixed and certain, and there is no complication or confusion of accounts between them as to the rents.

This question is not of that numerous class where an accounting, whether complicated or not, is decreed as an incident to other equitable relief the bill was filed to obtain, as in cases of a bill for partition, or where the subject-matter is an equitable interest or estate, of which subjects the court, having taken jurisdiction, will dispose of every connected matter of dispute.

The general rule in the exercise of chancery practice, subject to few exceptions, is, that when the plaintiff can have as effectual and complete a remedy in a court of law as in a court of equity, and that remedy is certain and adequate, the equity court will not interfere. To a bill in such a case a demurrer will lie, or it may be dismissed on that account, at any stage of the proceedings. Story Eq. Pl., § 473, n.; 1 Pom. Eq. Juris., § 178;

*Dargin v. Hewlett, ante,* p. 510. By statute in this State, re-
cognizing the foregoing rule, it is provided, that the
jurisdiction of the court of equity shall extend, "To all
civil causes in which a plain and adequate remedy is not
provided in the other judicial tribunals."—Code of 1886,
§ 720, sub-div. 1.

But, why should a court of equity be called on for the
*mere* purpose of settling an account between tenants in
common, and enforcing the collection of the same, where
the amount of rents received are certain, and there is no
complication of accounts? Mr. Freeman, treating this
matter says : "Courts of equity have concurrent juris-
diction with courts of law of all matters of account be-
tween tenants in common or other co-tenants. Either
co-tenant may invoke the assistance of equity to compel
an accounting upon showing a necessity therefor, and
can not be deprived of this assistance because he has an
adequate legal remedy by an action of account. In fact,
the superior facilities offered by courts of equity, where
an accounting has become necessary, are such that these
courts are almost universally resorted to, in preference
to the tribunals of the law. But, it has been determined,
that where the accounts are all on one side and are very
simple, and no discovery is sought, courts of equity will
decline taking jurisdiction of the case."—Freeman on
Coten. & Part., § 321. It is stated in the Am. & Eng.
Encyc. of Law, that "The general rule that an equitable
action can not be maintained where the remedy at law
is adequate and complete, applies to cases of joint ten-
ancy and tenancy in common."—Vol. 11, p. 1134.

The Pennsylvania court, touching the matter of reme-
dies at law between tenants in common, uses this langu-
age : "There is no doubt of our concurrent jurisdiction,
with courts of law, in matters of account, where the ac-
counts are mutual and complicated, and also where
they are all one side, but discovery is sought, and is
material to the relief. In the first class of cases, a bill
in equity is generally preferable to account render, and
as discovery is peculiarly a chancery jurisdiction, a
court of equity, to prevent a multiplicity of suits, will,
when it has legitimately acquired jurisdiction over the
cause for purposes of discovery, entertain the suit for
relief, and dispose of every connected topic of dispute.
But, on the other hand, where the accounts are all on

one side, and no discovery is sought or required, courts of equity will decline taking jurisdiction of the cause." *Gloninger v. Hazard*, 42 Penn. St. 389, 401, and authorities there cited. The .case of *Sanders v. Robertson*, 57 Ala. 465, was a bill in equity by one tenant in common against others, for an account of rents and profits. Judge STONE reviewed the authorities on the subject, pronounced the accounts between the parties complicated and difficult of adjustment, and expressed the conclusion of the court as follows : "Accounts, complicated as this is, can not be adjusted properly in a court of law ; *and for this reason*, courts of equity take original jurisdiction of such claims."

The case of *Nelms v. McGraw*, 93 Ala. 245, was supposed, in one of its features, to involve an accounting between tenants in common. The relation between the parties in the case was held not to be that of partners *inter sese*, and that the bill could not be maintained for the purpose of settling the alleged partnership accounts. It having been contended, that the bill might, notwithstanding, be sustained as one for an accounting between tenants in common, the court stated in reply to that proposition : "Conceding that a court of equity has jurisdiction to compel an account between tenants in common, where one has received more than his share of the profits, the exercise of the jurisdiction is dependent on unadjusted, complicated matters of account, or the necessity of a discovery. The bill shows neither. If the relation of the parties in respect of the lumber be that of tenancy in. common, on the facts alleged complainant's remedy at law is adequate."

According to the statements of the bill, Barker & Parker, received $1,200 a year for four years, as rents for the common property, making $4,800 during the entire period, one-third of which is claimed by the complainant in the original bill, Ann E. McCaw, and one-half by R. G. Pegram, as trustee, complainant in the cross-bill, with interest thereon, from the end of each year in which the rents were so received. The account is all on one side and is most simple. The claim is not open to adjustment, and a *quantum meruit* valuation cannot arise.—*Hairston v. Sumner*, 106 Ala. 381 ; *Gayle v. Johnson*, 80 Ala. 396, *supra*. If the allegations of the bill are true, and if upon such averments, the defendants

receiving the rents owe the complainants their part of it, can there be any reason why the complainants may not maintain an action of assumpsit at law against them for their proportion of the money received? On this ground the chancellor dismissed the said bills.

It is contended for the appellees, that the bill shows that it is wanting in necessary parties, as objected on demurrer ; that one-third interest in the common property belongs to the unsettled trust estate created by the will of Hugh McCaw, and only a regularly appointed trustee in succession of Mrs. Ann E. McCaw, deceased, the original trustee, was entitled to maintain the suit ; and though the bill was dismissed on another ground, was rightfully dismissed for this reason ; that such objection may be made at the hearing, or on error, or by the court *ex mero motu*.—*Wilson v. Holt*, 85 Ala. 97 ; 3 Brick. Dig. 373, § 98.

It is further contended, as again objected on demurrer, that the bill does not show that Parker, or Parker & Barker received any rents, issues and profits from any one, on account of or arising out of the rent or use of said warehouse property, or for or on account of the undivided interest therein of the complainants ; that the $1,200 per annum received by Parker & Barker, for four years, was under their contract of October 21, 1886, which provided that "this association (The Cotton Press Association of Mobile) agrees to pay Parker & Barker $1,200 per annum to prevent Planters Press & Warehouse from being used in any way for the cotton press or storage business, which they herein guarantee to do, to prevent competition from other sources ;" and that the stipend of $1,200 a year received by said Parker & Barker under that clause of their agreement with said association, cannot be construed as in the nature of rents, issues and profits, but was a joint personal guaranty of Parker & Barker to prevent a certain use of the property, for a breach of which they would have been liable in damages.

These points are pressed with much force and plausibility. We do not consider them, but prefer to base our decision of the case on the question we have decided, and on which the chancellor dismissed the bill.

There was no error, as assigned, in the decree of the chancery court, and it is affirmed.

**Affirmed.**